ANDREWS HALL *vs.* THOMAS CORCORAN & another.

A person who hires a horse of its owner to drive to a particular place, and drives it to another place, is liable in tort for the conversion of the horse, although the contract of hiring was made on the Lord's day, and, as both parties knew, for pleasure only and therefore illegal and void.

TORT. The declaration alleged that the defendants hired the plaintiff's horse and sleigh to drive from South Adams to North Adams and back in a prudent, careful and proper manner, and drove the same beyond North Adams to Clarksburg wrongfully, and managed and drove the horse so improperly, unskilfully and wrongfully on their return from Clarksburg to North Adams that the horse ran with the sleigh, and broke the sleigh and injured itself. The answer denied all the allegations of the declaration; and alleged that, if the defendants ever hired a horse and sleigh of the plaintiff, they never drove them farther than was agreed between the parties, and that the hiring and driving were on the Lord's day, and not a work of necessity or charity, as the plaintiff well knew.

At the trial in the superior court, before *Devens*, J., the plaintiff testified that he let his horse and sleigh to the defendants to drive to North Adams and back to South Adams, and that he never at any time authorized them to drive the same from North Adams to Clarksburg. Upon cross-examination, he testified that he let the horse and sleigh to the defendants, and received two dollars in payment therefor, on a Sunday.

Another witness called by the plaintiff testified that he saw the defendants with the plaintiff's horse and sleigh in North Adams village, the sleigh greatly damaged and the horse considerably injured by cuts and scratches on its legs : and that the defendants then told him that they had been with the horse and sleigh beyond North Adams to Clarksburg, a distance of two miles or more, and that on the way back from Clarksburg to North Adams the horse became unmanageable, and they tipped over and the horse ran away with the sleigh and caused the injuries. Upon cross-examination, he testified that this was on Sunday.

The plaintiff introduced evidence as to the amount and nature of the injuries to the horse and sleigh ; and also evidence tending to show that the horse was safe and kind to drive, and the sleigh nearly new, when the defendants hired them ; and rested his case.

The defendants admitted that the horse and sleigh were hired by them to drive only from South Adams to North Adams and back to South Adams ; and testified that the hiring was on Sunday, that they drove the horse and sleigh beyond North Adams to Clarksburg, and that the injury to the horse and sleigh occurred while on their return from Clarksburg to North Adams, substantially as hereinbefore stated.

There was conflicting evidence upon the question whether the plaintiff, at the time of letting the horse and sleigh, knew for what purpose the defendants were going with them to North Adams ; and to settle this point, the judge submitted to the jury this question : "Was the plaintiff aware that the horse and sleigh were hired for pleasure travel ? " and the jury answered : "He was."

The judge then ruled, upon the whole evidence and this answer of the jury, that the plaintiff could not maintain the action ; and instructed the jury to return a general verdict for the defendants, which was done, and the plaintiff alleged exceptions.

*A. J. Waterman*, for the plaintiff.

*M. Wilcox & S. W. Bowerman*, for the defendants.

GRAY, J. This bill of exceptions presents the question whether the owner of a horse, who lets it on the Lord's day to be driven for pleasure to a particular place, can maintain an action of tort against the hirer for driving it to a different place, and, in doing so, injuring it. At the trial in the superior court, it was ruled that he could not, and that ruling was in accordance with the decision of this court in *Gregg* v. *Wyman*, 4 Cush. 322. The only case, known to us, in which that decision has been followed, is *Whelden* v. *Chappel*, 8 R. I. 230. And the highest courts of New Hampshire and Maine, in able and well considered judgments, delivered upon precisely similar cases, have come to the opposite result. *Woodman* v. *Hubbard*, 5 Foster, 67. *Morton* v. *Gloster*, 46 Maine, 420. The respect due to the opinions of

those courts, and to the doubts which have always been enter-
tained by the bar of this Commonwealth of the correctness of
the decision in *Gregg* v. *Wyman*, has induced us to reconsider
the question ; and upon full consideration we are unanimously of
opinion that it was erroneous and must be overruled.

The general principle is undoubted, that courts of justice will
not assist a person who has participated in a transaction forbidden
by statute to assert rights growing out of it, or to relieve himself
from the consequences of his own illegal act.   Whether the form
of the action is in contract or in tort, the test in each case is,
whether, when all the facts are disclosed, the action appears to
be founded in a violation of law, in which the plaintiff has taken
part.   We have had occasion, while the present case has been
under advisement, to consider this test as applied to actions upon
contracts made on the Lord's day.   *Cranson* v. *Goss, post,* 439.
And our books ·afford several illustrations of its application to
actions of tort.

A person, for instance, who travels on Sunday in violation of
the Lord's day act, cannot maintain an action against a town for
a defect in the highway, or against the proprietors of a street
railway, in whose cars he is a passenger, for an injury to himself
from their negligence, because his own fault in illegally travelling
on the Lord's day necessarily contributes to the injury.   *Bos-
worth* v. *Swansey*, 10 Met. 363.   *Jones* v. *Andover*, 10 Allen, 18.
*Stanton* v. *Metropolitan Railway Co.* 14 Allen, 485.   So no ac-
tion can be maintained for a.deceit practised in an exchange of
horses on the Lord's day, because the plaintiff cannot prove the
deceit without showing the terms of the illegal contract in which
he participated.   *Robeson* v. *French*, 12 Met. 24.

But the fact that the owner of property has acted or is acting
unlawfully with regard to it is no bar to a suit by him against
a wrongdoer, to whose wrongful act the plaintiff's own illegal
conduct has not contributed.   Thus an action lies against one
who takes and appropriates to his own use property kept by the
plaintiff in violation of a statute and therefore liable to be de-
stroyed.   *Cummings* v. *Perham*, 1 Met. 555.   *Ewings* v. *Walker.*
9 Gray, 95.

The judgment in *Gregg* v. *Wyman* is based upon two proposi-tions : 1st. That the action, though in form tort, yet was essen-tially founded on a violation by the defendants of the contract of letting, in driving the horse beyond the place specified in that contract.   2d. That if the action was not to be considered as founded on the contract, still, to ·make the defendants wrong-doers, it was necessary for the plaintiff to show his own illegal act in letting the horse.   But, with the greatest deference to the opinion of our predecessors who concurred in that decision, we are constrained to say that we do not think that either of those propositions can be maintained.

An action of tort for the conversion of personal property, un-der our practice act, is governed by the same rules of evidence as an action of trover at common law.   *Robinson* v. *Austin*, 2 Gray, 564.   *Spooner* v. *Holmes*, 102 Mass. 503.   In trover, it was im-material how the defendant became possessed of the goods ; the very form of the action assumed that he had come into lawful possession of them by finding, and had since converted them to his own use ; the gist of the action was the conversion ; and the general issue was not guilty.   If the owner of cattle lent them to another to plough his land, and the bailee killed them, he was liable in trover.   Co. Lit. 57 *a*.   The riding or driving of a horse without the owner's leave, being an unlawful intermeddling with the property of another for the benefit of the person using it, was a conversion, for which trover would lie, whether he took the horse from the owner's stable, or acquired possession of it law-fully, as by a contract with the owner to drive it to a different place, or by finding in a highway.   *Countess of Rutland's case*, 1 Rol. Ab. 5.   *Mulgrave* v. *Ogden*, Cro. Eliz. 219.   *Bagshawe* v. *Goward*, Cro. Jac. 147, 148.   Doderidge, J., in *Isaack* v. *Clark*, 2 Bulst. 306, 309.   Holt, C. J., in *Baldwin* v. *Cole*, 6 Mod. 212. Bayley, J., in *Keyworth* v. *Hill*, 3 B. & Ald. 685, 687.

One who converted to his own use, or to that of a third person, goods intrusted to him by the owner, has been held responsible therefor in trover, although by reason of his infancy he was held not to be liable to an action for a breach of the contract under which the goods were put into his hands.   *Furnes* v. *Smith.* 1

Rol. Ab. 530. *Vasse* v. *Smith*, 6 Cranch, 226, 231. *Campbell* v. *Stakes*, 2 Wend. 137, 144. *Fitts* v. *Hall*, 9 N. H. 441. It was accordingly held in *Towne* v. *Wiley*, 23 Verm. 355, that an infant who hired a horse from the owner to drive to a particular place and back, and drove it to that place, but returned by a circuitous route, nearly doubling the distance, and stopped over night on the way, leaving the horse without food or shelter, by reason of which it died soon after being returned to the owner, was liable in trover; and Mr. Justice Redfield, in delivering judgment, said : " So long as the defendant kept within the terms of his bailment, his infancy was a protection to him, whether he neglected to take proper care of the horse, or to drive him moderately. But when he departs from the object of the bailment, it amounts to a conversion of the property, and he is liable as much as if he had taken the horse in the first instance without permission." And in *Lewis* v. *Littlefield*, 15 Maine, 233, it was held that an infant, in whose hands money had been put by the plaintiff to abide the result of an illegal wager, and who paid it to the winner after notice from the plaintiff not to do so, was liable to him in trover.

It is not necessary to consider whether the liability of the infant for his wrongful acts has or has not been too much restricted in some of these cases ; the material point is, that the objection that the action was founded on the contract by which he originally acquired possession of the property was held inapplicable to the action of trover. And the distinction between an action for misusing a horse in violation of the contract of letting, and an action for the conversion of the horse by driving it to a place without the contract, is clearly marked in the early cases in this court, in which, while the old rules of pleading prevailed, it was decided that an action for driving the horse beyond the distance agreed might be in trover, without regard to the question whether the horse had been misused ; and that an action for immoderately driving the horse upon a journey authorized or assented to by the owner must be in case for the misfeasance, and not in trover for a conversion. *Wheelock* v. *Wheelwright*, 5 Mass. 104. *Homer* v. *Thwing*, 3 Pick. 492. *Rotch* v. *Hawes*, 12 Pick. 136. See also *Lucas* v. *Trumbull*, 15 Gray, 306.

It therefore appears to us to be clear, upon principle and authority, that an action of tort for the conversion of the horse, by driving it beyond the place agreed in the illegal contract of letting and hiring, is not founded on that contract. And we think it is equally clear that that contract need not be shown by the plaintiff, and forms no part of his cause of action.

The general doctrine was well stated by Chief Justice Parker in *Dwight* v. *Brewster*, 1 Pick. 50, 55 : " The principle settled is, that a party to an unlawful contract shall not receive the aid of the law to enforce that contract, or to compensate him for the breach of it. It is not easy however to discern how a party to such contract, who becomes possessed of the property of the other party, with which he is to do something which the law prohibits, can acquire a right to that property. The contract being void, the property is not changed, if it remains in the hands of him to whom it is committed. If he has executed the contract with it, or it has become forfeited by judicial process, or if stolen or lost without his fault, he may defend himself against any demand of the owner in ordinary cases ; but if he has it in his possession, he must be liable for the value of it ; so that in an action of trover, with proper evidence of a conversion, the plaintiff would undoubtedly prevail."

The plaintiff in the present case delivered his horse to the defendants for the special purpose of being driven from South Adams to North Adams and back. He did not thereby give up his general property in the horse, or the right to bring an action for any injury to that property, to which, when all the facts are disclosed, it does not appear that any illegal act on his own part contributed. It is true that he delivered possession of the horse to the defendants for an illegal purpose, and that he might not maintain any action against them for an injury done to the horse in driving it in the execution of that purpose to the place agreed on, because the law will not assist him either to break or to enforce his illegal agreement. But that illegal purpose, and the only illegal purpose which was contemplated by the contract, or in which he participated, was the driving of the horse for pleasure to North Adams and back. The plaintiff's general prop-

erty in the horse was not derived from the illegal contract, nor defeated by it. The wrong committed by the defendants, for which they are now sued, was not, as we have already seen, a breach of the illegal contract by which he put his property into their hands ; nor is the ground of this action an abuse of the possession which they had thus acquired by his consent ; but it is a direct invasion of the plaintiff's general right of property, wholly outside of any contract between the parties, by the wrongful driving of the horse between North Adams and Clarksburg, and thus assuming control of the property for their own benefit, without any authority or license from the owner. This wrong is not varied in nature, or lessened in degree, by the fact that they had originally acquired possession of the horse with his consent ; for it consisted in the wrongful use of his horse in driving it beyond North Adams ; and that, as is fully established by the authorities already cited, was equally a conversion for which an action of tort in the nature of trover would lie, even if the defendants had previously come into possession of the horse lawfully, under a contract with the owner for another and distinct purpose, or by finding it in the highway at North Adams. Proof of the contract under which the horse was delivered by the plaintiff to the defendants showed indeed that the driving of the horse beyond North Adams was not within its terms or object ; but the only legitimate inference from that fact is, that it is wholly immaterial whether such a contract was ever made, or, if once made, whether it had been terminated by mutual assent of the parties or by the wrongful act of the defendants. In short, the defendants' liability for the injury done by them to the plaintiff's property is not affected by the question whether the contract between the parties was valid or void in law, or whether there was or was not any such contract in fact. That contract need not therefore be shown by the plaintiff ; and if proved by the defendants, by cross-examination of the plaintiff's witnesses or otherwise, it has nothing to do with the plaintiff's cause of action against the defendants.

The case of *Duffy* v. *Gorman*, 10 Cush. 45, adds nothing to the weight of *Gregg* v. *Wyman*. Duffy had delivered goods to Dona-

hoe, a pedler, for the purpose of being unlawfully sold without license , and brought trover against Gorman, to whom Donahoe had pledged them as security for a debt of his own. The court, without discussion of principles or authorities, gave this *per curiam* opinion : " As the plaintiff can claim only through his own illegal contract with Donahoe, which the law will not allow, this action cannot be maintained." Those goods had been delivered by the plaintiff to the other party to the contract, not merely to be used for a purpose which would leave the general property in them in the plaintiff, but for the purpose of absolutely disposing of that property in violation of law ; and the case might perhaps be considered as falling within that class mentioned by Mr. Justice Perley in 5 Foster, 69, as distinguishable from the present, " where the property is intrusted to another to be wholly devoted and appropriated to an illegal purpose."

In the later cases in this Commonwealth, *Gregg* v. *Wyman* has been cited only for the general principle that no action will lie, in which the plaintiff requires aid from an illegal transaction or agreement to which he was himself a party ; and the court did not consider or have occasion to consider whether the facts of that case brought it within the proper application of the principle.

In *Welch* v. *Wesson*, 6 Gray, 505, it was held that one of two persons, engaged in trotting their horses against each other for money in violation of a statute, might maintain an action against the other for wilfully running him down ; because, as was pointed out in the opinion, the plaintiff, in order to maintain his action, had no occasion to show that he was engaged in any unlawful pursuit at the time of the injury to his property, or that he had previously made any illegal contract, or what the terms of that contract were ; and neither the contract nor the race between the parties appeared to have had anything to do with the trespass committed by the defendant upon the property of the plaintiff.

In *Way* v. *Foster*, 1 Allen, 408, the present chief justice said that it must be admitted that *Gregg* v. *Wyman* carried the doctrine to its extreme limit ; and referred to *Welch* v. *Wesson* with approval ; and the action which the court in *Way* v. *Foster* declined to sustain was an action for immoderately driving a horse upon

the very journey which the plaintiff had knowingly delivered it to the defendants for the purpose of being illegally driven upon. That action, though in form tort, was in substance founded upon a breach of the contract by which the defendant had obtained possession of the horse. To such a case the argument of Mr. Justice Fletcher in *Gregg* v. *Wyman*, that the question whether the injury sued for was a wrong to the plaintiff depended upon the terms of the contract between the parties, might with more reason be applied.

In *King* v. *Green*, 6 Allen, 139, it was held that one, who had on the Lord's day delivered a chattel in pledge to secure the payment of the hire of a horse for illegal travel on that day, could not, upon a subsequent demand and refusal of the chattel, maintain an action for its conversion, without paying such hire, because, a special property having passed to the defendant by the delivery, the case fell within the maxim *In pari delicto potior est conditio defendentis*. A similar decision had previously been made in *Scarfe* v. *Morgan*, 4 M. & W. 270. In *Ladd* v. *Rogers*, 11 Allen, 209, the action was in contract for the price of a horse sold on the Lord's day and kept by the purchaser afterwards; and it was decided that the action could not be maintained on the contract of sale, because that was illegal, and that no contract to pay the value could be implied from the subsequent use of the horse. In *Myers* v. *Meinrath*, 101 Mass. 366, the only point adjudged was, that where a contract, illegally made on the Lord's day, for the exchange of chattels, had been fully executed by delivery on both sides, the subsequent return of one of the chattels and demand of the other would not sustain an action of tort in the nature of trover for the conversion of the latter. There is nothing, in the decision or opinion in either of these cases, to support the position that the delivery of possession of a chattel on the Lord's day by way of bailment for a special purpose in violation of the statute will prevent the general owner from maintaining an action against the bailee for using the chattel, not under the possession so acquired, but for an entirely different purpose, not contemplated in the illegal contract, and of itself amounting to a conversion.

In *Cox* v. *Cook*, 14 Allen, 165, a man, who, while unlawfully travelling on the Lord's day, stopped at an inn and left a robe with the innkeeper's servant, was allowed, after demanding it the next morning, to maintain an action of tort against the innkeeper for its conversion ; and Chief Justice Bigelow said : " The claim of the plaintiff to the property did not necessarily require him to show in its support a violation of the Lord's day."

It has been held in several recent cases, that a person who places his wagon in the street in a position prohibited by statute, or by municipal ordinance, may yet maintain an action against another negligently driving against it. *Spofford* v. *Harlow*, 3 Allen, 176. *Steele* v. *Burkhardt*, 104 Mass. 59. *Kearns* v. *Sowden*, Ib. 63 note. In *Steele* v. *Burkhardt*, the present chief justice said : " It is true generally that, while no person can maintain an action to which he must trace his title through his own breach of the law, yet the fact that he is breaking the law does not leave him remediless for injuries wilfully or carelessly done to him, and to which his own conduct has not contributed."

The necessary conclusion is, that upon the case proved at the trial, if not controlled by other evidence, the defendants were liable for the wrongful conversion of the horse by driving it to a place to which the plaintiff had not agreed that they might drive it. The form of the declaration is peculiar. But it was not demurred to, and no objection to it appears to have been raised at the trial, or was made at the argument. It is in tort, and alleges the horse to have been the plaintiff's property ; and although some of its allegations are like those of an action on the case for immoderate driving, it contains a distinct allegation that the defendants wrongfully drove the horse beyond North Adams. It thus alleges all the facts necessary to constitute a conversion of the horse to the defendants' use ; and under the Gen. Sts. c. 129, § 2, by which " the substantive facts necessary to constitute the cause of action may be stated with substantial certainty, and without unnecessary verbiage," the mere omission to state the legal conclusion affords no ground for giving judgment against the plaintiff at this stage of the case. *Exceptions sustained.*