## FREDERICK M. FROST *vs.* LEROY PLUMB.

The defendant hired a horse of the plaintiff on Sunday to go on that day to the town of *S*. He went several miles beyond, and while doing so caused the death of the horse by overdriving. Held, in an action of trover joined with case, that the plaintiff could recover, notwithstanding the statute prohibition of all secular business on Sunday.

And it seems that he could equally recover for an injury to the horse by the wrongful act of the defendant, within the limits for which he was hired.

The distinction is between wrongful acts which constitute a mere breach of the contract, requiring on the part of the plaintiff the proof of the contract as an essential part of his case, and wrongful acts that are independent of the contract and toward which the contract stands in a mere incidental relation.

CASE, and trover; brought to the city court of the city of Waterbury, and tried to the jury on the general issue before

*Fields, J.* Verdict for defendant, and motion to the Superior Court for a new trial, for error in the charge of the court, which motion was reserved by the latter court for the advice of this court. The case is fully stated in the opinion.

*O'Neil,* with whom was *Webster,* in support of the motion.

*H. B. Munson,* contra.

CARPENTER, J. The defendant hired a horse of the plaintiff to drive from Waterbury to Southington on Sunday. He drove, or permitted others to drive, the horse some ten miles beyond Southington. The weather was excessively hot, and it is claimed that the extra distance, coupled with immoderate driving, caused the horse's death. This action, trover and case joined, is brought to recover the value of the horse.

The court instructed the jury "that if the owner of a horse knowingly lets him on the Lord's Day, to be driven to a particular place, but not for any purpose of necessity or charity, and the hirer injures the horse by immoderate driving, in consequence of which he afterwards dies, the owner cannot maintain an action against the hirer for such injury, although it occurs while going to a different place, and beyond the limits specified in the contract." The jury returned a verdict for the defendant, and the plaintiff moved for a new trial. The Superior Court reserved the case for our advice.

The court in its charge was governed by the case of *Gregg* v. *Wyman,* 4 Cush., 322. In Maine and New Hampshire the doctrine of that case is repudiated, and the law is declared to be otherwise. *Morton* v. *Gloster,* 46 Maine, 420; *Woodman* v. *Hubbard,* 5 Foster, 67. In *Whelden* v. *Chappel,* 8 R. Isl., 230, the court followed *Gregg* v. *Wyman.* But in a late case, which has come to our knowledge since this case was decided, *Hall* v. *Corcoran,* 107 Mass., 251, *Gregg* v. *Wyman* is expressly overruled. In that case the defendants hired a horse and sleigh on Sunday to drive from South Adams to North Adams for pleasure, the plaintiff knowing the purpose for which the team was hired. After reaching North Adams they drove to Clarksbury, and on their return the horse and sleigh were

injured. The court held unanimously, granting a new trial, that the defendants were liable. Mr. Justice Gray, in giving the opinion of the court, says : " It therefore appears to us to be clear, upon principle and authority, that an action of tort for the conversion of the horse by driving it beyond the place agreed in the illegal contract of letting and hiring, is not founded on that contract. And we think it is equally clear that that contract need not be shown by the plaintiff, and forms no part of his cause of action." Thus it will be seen that the law of Massachusetts on this subject is now in substantial harmony with the law of Maine and New Hampshire. We think that the law of this state ought to be, and is, the same. The charge of the court therefore, that the defendant was not liable, although the injury occurred in going to a different place, and beyond the limits specified in the contract, was clearly erroneous. We understand the rule to be this :— the plaintiff cannot recover whenever it is necessary for him to prove, *as a part of his cause of action*, his own illegal contract, or other illegal transaction ; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover. It is sufficient if his cause of action is not essentially founded upon something which is illegal. If it is, whatever may be the form of the action, he cannot recover. Apply that rule to this case. It was only necessary for the plaintiff to prove his own title to the property, and a conversion by the defendant. The destruction of the horse was a conversion ; and proof that the injury which caused his death occurred while being driven without the consent of the owner, shows a complete cause of action without any reference to an illegal contract.

The illegal letting may or may not appear. If it does, it simply explains the defendant's possession, and proves that it was by the owner's permission, at least for a certain purpose. It may give the defendant an opportunity to injure the horse, but it does not cause the injury ; nor does it contribute to it in such a sense as to make the plaintiff a party to the

wrongful act. If it does not appear, before the defendant can avail himself of it as a defence, it becomes necessary for him to prove the illegal contract to which he was a party, and his own illegal conduct in traveling upon the Sabbath. But he can no more avail himself of that as a defence than the plaintiff can as a cause of action. Either party, whose success depends upon proving his own violation of law, must fail. As the charge to the jury was manifestly in conflict with these principles the Superior Court must be advised to grant a new trial.

Perhaps we might with propriety stop here. But there is another question involved in the case which may be important in another trial. It seems that the court excluded evidence of improper driving in going to, and beyond, the place specified in the contract. We have just seen that the defendant is clearly liable for the latter. It becomes an interesting inquiry how far he is liable for the former.

In *Way* v. *Foster*, 1 Allen, 408, it was held that the defendant in a similar case was not liable, on the ground that the immoderate driving was virtually a breach of his contract. In *Welch* v. *Wesson*, 6 Gray, 505, it was held that the plaintiff might recover for an injury done to his property, while he and the defendant were engaged in trotting horses for money contrary to statute. The distinction between the two cases seems to be, that in the former there was a bailment, and the misfeasance of the defendant was a breach of his duty as bailee; while in the latter, the act of the defendant in running the plaintiff down was a wrongful act, independent of any contract. It seems to us that the difference between the two cases is more apparent than real. No express contract was violated in either case. An implied contract therefore must be relied upon; and there seems to be quite as much reason for saying that the defendant in one case agreed to act fairly in the race, as that the defendant in the other agreed to drive the horse properly. Strictly speaking it was not a matter of actual agreement in either case. In each case the act of the defendant was a violation of a duty imposed by law; in the one, a duty of universal obliga-

tion, to do his neighbor no wrong; in the other, a specific duty imposed by the law of bailments.

If the usual test, whether the plaintiff can prove his cause of action without proving the unlawful agreement, be applied, are not the plaintiff's chances quite as good in the case of a bailment as in the other case? In one case the plaintiff proves that the defendant wrongfully injured his horse while the parties were driving side by side; in the other, the plaintiff proves that the defendant wrongfully injured his horse while driving him by his consent. If the circumstances of the race are unimportant, so the nature and character of the bailment are immaterial. In each case the tort, and not the contract, is the gist of the action.

But a determination of the precise question decided in *Way* v. *Foster* is unnecessary in the present case. The immoderate driving during the bailment, of itself, or in connection with the improper driving after the bailment terminated, caused the death of the horse. There can be no doubt that the general rule is that an action of trover will lie in such a case, and that the plaintiff in this case is entitled to recover, unless the letting the horse on Sunday is a bar to a recovery. In each of two cases cited above, *Woodman* v. *Hubbard*, 5 Foster, 67, and *Hall* v. *Corcoran*, 107 Mass., 251, the wrongful act which resulted in the death of the horse occurred after the bailment had terminated; but much of the reasoning of the court applies as well to a destruction during the bailment, as to a destruction afterwards. In the latter case, the court carefully avoids overruling *Way* v. *Foster*, and suggests the only distinction by which the two cases can be reconciled, and that is the difference between an action of tort in the nature of an action of trover, and an action of tort for abusing the horse while driving to the place for which he was hired.

On the whole we regard the cases cited above as authorities for holding that a party who hires and drives a horse upon the Sabbath, and, while so driving it, causes its death, either wilfully or negligently, is liable to the owner in an action of trover. We think also that the law thus stated can be fully vindicated upon principle. The plaintiff, in making a contract

prohibited by law, exposed himself to all its legitimate consequences. He is not only liable to the penalty, but the law will refuse to aid him in enforcing it, or in recovering compensation for a breach of it, and will not allow him to recover in any action which essentially depends upon it. But it does not, in a case like this, deprive the owner of his general property in the horse, nor place him, or his property, outside of the protection of the law. Nor will it in any sense operate to justify or excuse the other party in the commission of any wrongful act not contemplated by the agreement. Now it must be conceded that an action of trover is not founded upon a contract. None is referred to in the declaration, and none need be proved on the trial. All that the plaintiff is required to prove is title in himself, and a conversion by the defendant. In this case the title is not in dispute. And when the plaintiff proves that the defendant was driving his horse from Waterbury to Southington, and that while doing so he wilfully or negligently drove him in such a manner as to cause his death, is not his case fully proved ? It is quite immaterial how the horse came to be in the defendant's possession. Whether lawfully or unlawfully is not of the slightest consequence. He may have found him in the highway; he may have hired him of a stranger; he may have taken him from the plaintiff's stable, with or without leave, upon a week day, or upon the Sabbath; it is all the same. The plaintiff is bound to offer no proof on the subject. If the defendant would derive any benefit from the illegal contract *he* is the one to prove it; and when he attempts to do so, he is met with the objection that he cannot avail himself of an illegal transaction in which he participated as a defense to the action.

For these reasons we are of the opinion that it was competent for the plaintiff to prove the misconduct of the defendant both before and after reaching Southington; and that if either, or both, caused the death of the horse, the plaintiff is entitled to recover.

A new trial is advised.

In this opinion the other judges concurred.