## FREDERICK J. SMITH *vs.* WILLIAM ROLLINS.

A statute being in force and providing that "every person who shall do or exercise any labor or business, or work of his ordinary calling. . . . . on the first day of the week, or suffer the same to be done . . . . by his children, servant, or apprentices, works of necessity and charity only excepted, shall be fined not exceeding " . . . .

S., a livery stable-keeper, let, in his ordinary business, a horse and carriage to be driven for pleasure to a particular place. The hirer drove them to a different place, and returned them damaged. Whereupon S. brought trover against the hirer : —

*Held,* affirming *Whelden* v. *Chappel,* 8 R. I. 230, that the action would not lie.

Where a plaintiff's cause of action arises from a violation of law on his part the suit cannot be sustained, and it is immaterial whether the violation of law appears from the plaintiff's direct evidence or is elicited from him by legitimate cross-examination.

EXCEPTIONS to the Court of Common Pleas.

Trover for the conversion of a horse, buggy, and harness originally brought in the Justice Court of the city of Providence, and appealed by the plaintiff to the Court of Common Pleas. The writ was dated April 24, 1874. The defendant pleaded the general issue.

At the trial in the Court of Common Pleas, after the evidence had been closed, the plaintiff requested the presiding judge to charge the jury as follows : —

1. When a livery stable-keeper, in the exercise of his ordinary calling, lets a horse and buggy to be driven to a particular place on Sunday, not being called for either by necessity or charity, and the hirer drives them to another place, such use of said property amounts to a conversion thereof by the hirer, for which he will be liable in an action of trover, if the contract of hiring need not be and is not proven as a necessary part of the plaintiff's case.

2. A person who hires a horse and buggy of a livery stable-keeper on a week day to drive to a particular place on Sunday for pleasure, and drives to another place, is liable in trover for the conversion of them.

The judge refused so to charge ; but did instruct the jury that if the plaintiff, in the exercise of his ordinary business or calling, agreed on a week day to let his horse and buggy to the defendant to be used on Sunday, and not in a case of either necessity or charity, and did, pursuant to said agreement, deliver such horse and buggy to the defendant on Sunday, it was a contract

made in violation of law; and that therefore the plaintiff could not sustain an action of trover for the conversion of the property by the defendant's driving it to a different place from that specified in the contract of hiring; and that the ability of the plaintiff to establish his case without proving the illegal contract was immaterial, if the illegal contract appeared from the whole testimony in the case.

The plaintiff excepted, and, after verdict for the defendant, brought his exceptions as allowed to this court.

*George B. Barrows*, for the plaintiff, in support of the exceptions.

The two questions raised by the bill of exceptions are: 1. Whether a livery stable-keeper who, in the exercise of his ordinary calling, lets a horse and buggy to be driven to a particular place on Sunday for pleasure, can maintain an action of trover against the hirer who drives them to another place and injures them; and 2. Whether he can maintain such action, if the contract of hiring need not be, and is not, proven by the plaintiff as a necessary part of his case.

The only grounds upon which the plaintiff's right to redress has been denied in this class of cases are, that his cause of action is founded upon his illegal contract, and he must himself show his illegal contract in order to establish his case. *Gregg* v. *Wyman*, 4 Cush. 322; *Whelden* v. *Chappel*, 8 R. I. 230.

But these propositions have failed to stand the test of judicial criticism and practice. *Woodman* v. *Hubbard*, 25 N. H. 67; *Morton* v. *Gloster*, 46 Me. 520; *Nodine* v. *Doherty*, 46 Barb. S. C. 59; *Hall* v. *Corcoran*, 107 Mass. 251; *Frost* v. *Plumb*, 40 Conn. 111.

The plaintiff's action is for the conversion of his property. The conversion consists in the use of it by the defendant for his own benefit, without the plaintiff's permission; and such use is a conversion, because it is in exclusion and defiance of the plaintiff's right as owner. 2 Greenl. Ev. § 642; 1 Chitty on Pl. 146.

The plaintiff's injury, therefore, is not a violation of any contract or of any right arising therefrom, but of the right of ownership; and upon that right is his cause of action founded. *Homer* v. *Thwing*, 3 Pick. 492; *Dwight* v. *Brewster*, 1 Ibid. 50. The last case was approved in *Meyers* v. *Meinrath*, 101 Mass. 366.

That the plaintiff need not prove his unlawful act is expressly decided by cases heretofore cited, and is illustrated by the present case. The only two things necessary for the plaintiff to prove are property in himself, and conversion by the defendant. 1 Chitty on Pleading, 146, citing Lord Mansfield in 1 Burr. 31. And conversion consists only in beneficial use and absence of permission for such use.

Evidence of a bailment, therefore, is relevant only to the question of authority in the defendant to use the property. That there was no authority, it is submitted, is quite as properly and effectually proved by the plain, direct, and full statement to that effect of the plaintiff, as by proving authority for one thing, and leaving it to be merely *inferred* that there was none for another. It may be questioned if a prudent lawyer would trust to the inference and fail to elicit a direct and positive denial of any authority.

If such denial be made, then what necessity is there for evidence of any bailment? Upon the question of authority, and to disprove conversion, it may be necessary, in a given case, for the defendant to show the bailment, and that he was acting within its terms. But in this case, the fact that there was any contract whatever is not only made to appear solely by the defendant himself, but it is proven for the only purpose of showing it to be in violation of a penal statute made to enforce morality, and of invoking its illegality, in which he participated, to secure immunity from liability for the wrongful destruction of his neighbor's property.

"But he can no more avail himself of that as a defence than the plaintiff can as a cause of action. Either party whose success depends upon proving his own violation of law must fail." *Frost* v. *Plumb*, 40 Conn. 111; *Welch* v. *Wesson*, 6 Gray, 505.

The fact that the plaintiff had done an unlawful act in respect to his property does not commit it to the mercy of wrongdoers. That would be practical outlawry, which "is putting a man out of the protection of the law, so that he is incapable of bringing an action for redress of injuries, and it is also attended with a forfeiture of all one's goods and chattels." 3 Bl. Com. 284; *Cummings* v. *Perham*, 1 Met. 555; *Ewings* v. *Walker*, 1 Gray, 95; *Steele* v. *Burkhardt*, 104 Mass. 59.

The decision in *Gregg* v. *Wyman*, 4 Cush. 322, did not distinguish between those cases where the plaintiff's right grows out of, rests upon, and is ascertained by the unlawful contract, and his injury is a mere invasion of such contract right, *i. e.* where his cause of action *is* founded upon his unlawful act; and those cases where the plaintiff's right is independent of, and separable from, such contract, and his injury is an invasion of that right, *i. e.* where his cause of action is *not* founded upon his unlawful act. It takes for granted the only two vital propositions in the case. It cites an imposing array of cases whose authority no one questions, to establish general rules of law whose existence no one doubts, and applies them to assumptions whose correctness every one denies. It has been overruled. *Hall* v. *Corcoran*, 107 Mass. 251.

The case of *Whelden* v. *Chappel*, 8 R. I. 230, was decided upon the authority of *Gregg* v. *Wyman*, 4 Cush. 322, before the latter was reversed, and adopted its conclusions. The attention of the court was apparently not called to the above distinction, nor do the two cases then reported, in which it is pointed out and applied, appear to have been cited. Moreover, the illegal contract was made to appear as a part of the plaintiff's case. .

*Henry J. Spooner*, for the defendant, *contra*, cited *Whelden* v. *Chappel*, 8 R. I. 230.

*February* 24, 1877. MATTESON, J. The bill of exceptions raises the question whether a livery stable-keeper, who, in his ordinary business, lets a horse and carriage to be driven to a particular place on Sunday, for pleasure, can maintain an action of trover against the hirer for driving them to a different place.

Such a contract, to be executed on Sunday, in violation of the statute prohibiting the doing or exercising of any labor or business, or work of one's ordinary calling, works of necessity and charity only excepted; or the using of any game, sport, play, or recreation on the first day of the week, is illegal. Gen. Stat. R. I. cap. 232, § 17; *Allen* v. *Gardiner et al.* 7 R. I. 22; *Whelden* v. *Chappel*, 8 R. I. 230.

In the latter case, which was similar to the present, the conversion consisted solely in driving the horse and buggy beyond the place specified in the hiring. The court held that proof of that contract, which was illegal, was *necessary* to establish the conversion, and that the plaintiff, therefore, could not recover.

The evidence in the present case, exclusive of the contract of bailment, discloses nothing in the defendant's use or treatment of the property, or in his conduct in relation to it, which amounts to a conversion; for though the property was returned in a damaged condition, there is nothing to show that the injury was caused by the defendant's act or negligence. All the testimony upon that matter was the defendant's statement to the plaintiff that he had stopped on the road to feed the horse, and that the horse took fright and ran.

To establish the conversion, therefore, it was necessary for the plaintiff to prove that the defendant in his use of the property had not adhered to the terms of the contract. The regular and proper mode of doing this was to put in evidence the contract which defined the authority of the defendant, and then the use which he had made of the property. The moment, however, the illegal contract appeared, the well settled rule of law, that no action will lie to recover a demand or claim for damages, if, to establish it, the plaintiff requires aid from an illegal transaction in which he has participated, or is under the necessity of showing or depending in any degree upon an illegal contract to which he is a party, would have applied, and barred the suit. The plaintiff's counsel, aware of this difficulty and seeking to avoid it, took care to limit the testimony of his client (the only witness), in his direct examination, to the negative statements, — that he had not let or loaned his property to the defendant, or any one else, to be used for the purpose for which it was used, or to be driven to Mark Rock, or in the direction in which it was driven; and that the use made of his property by the defendant was wholly without his knowledge, license, or authority. The defendant's counsel then cross-examined the plaintiff upon these matters, and the cross-examination disclosed the contract and its illegality.

The plaintiff's counsel contended on the hearing, that the fact that there was no authority for the defendant's use of the property was as properly and effectually proved by the plaintiff's plain, direct, and full statement to that effect, as by proving authority for one thing and leaving it to be inferred there was none for another. That as the fact that there was an illegal contract, to which the defendant was a party as well as the

plaintiff, was made to appear by the defendant himself, for the purpose of escaping liability for the wrongful use of the plaintiff's property, the defendant could no more avail himself of that contract as a defence than the plaintiff could have done as a cause of action.

We do not assent to these claims.

The plaintiff was bound to prove the conversion, which depended upon the question whether or not the defendant was authorized to use the property as he did. That · he was not authorized was the proposition which the plaintiff was to establish ; and he should have done so, not by asserting that there was no authority, which might be merely his inference or opinion, but by putting in evidence all material facts, showing or tending to show a want of authority. The statement of the plaintiff's testimony, above recited, implied that he had let or loaned his property to be used for some purpose, to be driven somewhere. What that letting was could not be otherwise than material to a proper understanding of the case, and the correct determination of the question of authority. The jury ought not to be required to render their verdict, nor the court its judgment, without the knowledge of all material facts.

Again, the · statement of the plaintiff, in the direct examination, opened the door for the defendant to cross-examine him in relation to the letting, its terms, and all the circumstances attending it ; and, though the contract was thus first made to appear, yet, as it appeared in legitimate cross-examination, upon matters opened in the direct, it was none the less a part of the plaintiff's case because disclosed by the cross-examination instead of the direct. It was the supplementing of the plaintiff's case, presenting it in its true light to the court. Doubtless the defendant's purpose was to prevent the plaintiff's recovery, and, though this was the effect, it resulted from the inherent difficulty of the plaintiff's case. Had the tort been so distinct from the contract as to have been capable of complete proof by the plaintiff, without affording the defendant the right to show the contract in cross-examination, so that the defendant would have been compelled to set it up in defence as a part of his own case, there would have been more force in the plaintiff's claim that the defendant could not avail himself of such a defence.

We think, therefore, as was decided by this court in *Whelden* v. *Chappel,* 8 R. I. 230, that in an action of trover, for the conversion of personal property delivered to the defendant under a contract of bailment, in which the alleged conversion consists solely in a different use of the property from that contemplated by the bailment, proof of the contract is *essential* to proof of the conversion, and that if that contract be illegal the plaintiff cannot recover.

The cases of *Morton* v. *Gloster,* 46 Me. 520; *Nodine* v. *Doherty,* 46 Barb. S. C. 59; and *Frost* v. *Plumb,* 40 Conn. 111, in which the plaintiff was permitted to recover, do not appear to be inconsistent with these views. In each of them there were acts of conversion wholly distinct from, and irrespective of, the contract, and capable of complete proof without suggestion of the contract. The courts in these cases rest their decisions upon the ground that proof of the contract was not *essential* to proof of the conversion.

The plaintiff has also cited *Woodman* v. *Hubbard,* 25 N. H. 67; and *Hall* v. *Corcoran,* 107 Mass. 251.

In the former it was held that the plaintiff might recover even though obliged to prove his illegal contract. The ground of decision appears to be that the plaintiff's right of property is not affected by his illegal act in making the contract; that the conversion is a direct, substantial invasion of that right, for which the plaintiff sues as owner of the property; that his claim is founded upon the tort and not upon the contract. It is doubtless true that an action of trover is founded in tort, and not on contract. We believe, however, that no other case can be found to sustain the position, that the plaintiff can recover notwithstanding proof of his illegal contract necessarily appears in the proof of his case. *Phalen* v. *Clark,* 19 Conn. 421, cited in *Woodman* v. *Hubbard,* 25 N. H. 67, though apparently it is so claimed, does not in our judgment sustain the position. The learned judge who prepared the opinion in the latter case says of *Phalen* v. *Clark :* " The plaintiff in that case could not show his property in the lottery ticket, which was the subject of the suit, without showing his illegal contract with the defendant respecting the ticket; yet as it appeared when the illegal contract was shown that it did not extend to the plaintiff's property in the

ticket, the court held him entitled to recover." He then proceeds to quote the rule laid down in *Phalen* v. *Clark*, as follows: " If the plaintiff requires any aid from an illegal transaction to establish his demand he cannot recover it; or, in other words, if he is unable to support it without relying upon an unlawful agreement between himself and the defendant, he must fail." There would certainly seem to be an inconsistency between the .action of the court in *Phalen* v. *Clark* as stated, and the rule quoted from their opinion. That inconsistency disappears upon reference to the case itself; for it there appears that, though the majority of the court held that the plaintiff was entitled to recover, it was upon the ground that he *could* show his .property in the ticket *without showing* the illegal contract. They say: " We do not admit the claim of the defendants, that this bill cannot be sustained without proving and relying upon what is claimed to be the original illegality of Clark's agency, apparent from the allegations in the bill." 19 Conn. 433. Again, the court in *Woodman* v. *Hubbard*, 25 N. H. 67, appear to have been influenced in their decision by the apprehension that, if the action could not be sustained, a plaintiff, who had delivered his property to a defendant, under an illegal contract between them for its temporary use, would be without a remedy, even though the defendant should refuse to restore the property, or should sell or destroy it. If this were so, it would indeed be a strong argument in favor of sustaining the action; but such would not be the result, for the retention of the property, after a demand, or its sale, or destruction, would be a conversion wholly distinct from, and independent of, the contract, upon proof of which, and of his title, the plaintiff would be entitled to recover the value of the property.

In *Hall* v. *Corcoran*, 107 Mass. 251, the court held that, as the action was founded upon the tort, and not upon the contract, the contract need not be proved because it formed no part of the cause of action. They say: " Proof of the contract under which the horse was delivered by the plaintiff to the defendants showed, indeed, that the driving of the horse beyond North Adams was not within its terms or object; but the only legitimate inference from that fact is, that it is wholly immaterial whether such contract was ever made; or, if once made, whether it had been ter-

minated by mutual assent of the parties, or by the wrongful act of the defendants. In short, the defendants' liability for the injury done by them to the plaintiff's property is not affected by the .question whether the contract between the parties was valid or void in law, or whether there was or was not any such contract in fact. That contract need not, therefore, be shown by the plaintiff ; and if proved by the defendants, by cross-examination of the plaintiff's witnesses, or otherwise, it has nothing to do with the plaintiff's cause of action against the defendants." 107 Mass. 257. The court appear to have lost sight of the distinction, plainly marked, between those cases in which the tort is some breach of duty, in violation of the plaintiff's right entirely separable from the contract, and those in which the tort and contract are inseparable. Applied to the former, the language of the court is unobjectionable ; in relation to the latter, it seems to us erroneous. If the tort cannot be made to appear without proof of the contract, certainly the contract can hardly be considered immaterial, or as not affecting the liability of the defendant, even though it may not be a part of the cause of action.

For the reasons given we cannot agree with the conclusions arrived at in *Woodman* v. *Hubbard*, 25 N. H. 67 ; and *Hall* v. *Corcoran*, 107 Mass. 251, upon the matters we have referred to above. We are still of the opinion that the decision of our own court, in *Whelden* v. *Chappel*, 8 R. I. 230, is more consonant with authority, and founded upon the better reasons.

*Exceptions overruled.*