FRANCES FLEGENHEIMER, as Administratrix, etc., of ARTHUR FLEGENHEIMER, Deceased, Respondent, *v.* THOMAS A. BROGAN, Appellant.

Second Department, April 29, 1940.

*Sydney A. Syme,* for the appellant.

*Ulysses S. Adler,* for the respondent.

HAGARTY, J. In three causes of action set forth in the complaint the plaintiff seeks damages in the aggregate sum of $500,000. The first pertains to the claimed conversion of the capital stock of the Yonkers Colonial Corporation, engaged in operating a brewery and originally incorporated under the name Penar Corporation, hereinafter referred to as " Yonkers." The second charges that the defendant, by his acts and conduct, induced Yonkers to breach its agreement to pay to the plaintiff the sum of $109,264.25, the balance of a loan made to it by plaintiff's intestate, and prevented the payment of such sum to her, which claim was subsequently established against Yonkers in bankruptcy. The third involves the

alleged conversion of a bond and mortgage in the sum of $132,000, executed and delivered by Yonkers to Edward Ann Corporation, a corporation previously holding title to the brewery property. This appeal involves the sufficiency of the first, fifth, sixth, seventh and eighth defenses. We are in agreement with the learned Special Term justice that all these defenses are insufficient, with the exception of the determination as to the first, which we hold to be sufficient.

Plaintiff, in support of her first cause of action, alleges that her intestate, at the time of his death on the 24th day of October, 1935, was the actual owner of the capital stock of Yonkers, which was held in the name of his dummy and agent, one William M. Vogel, the consideration of $100,000 having been paid by plaintiff's intestate. After the death of intestate, and on the 11th day of August, 1936, Vogel and the defendant entered into a contract under which the defendant agreed to purchase the Yonkers stock. Although consideration was recited in the contract, and in form paid to Vogel, the latter received only the sum of $3,000, which the defendant caused Yonkers to pay to him after the stock had been acquired by defendant. At the time the defendant knew that the stock belonged to the plaintiff, as administratrix. In the second cause of action it is alleged that there was owing from Yonkers to intestate the sum of $109,264.25, representing the balance of a loan made by intestate to Yonkers, which loan was carried on the books of that corporation in the name of Vogel; that defendant, after acquiring control of Yonkers, declared himself to be the owner of the indebtedness and caused entries to be made canceling and discharging it of record; that Yonkers was adjudicated a bankrupt on the 11th day of October, 1938, as the result of a voluntary petition caused to be filed by the defendant. In that proceeding plaintiff's claim for the amount of the loan was allowed, but moneys with which to pay it were not available. In the third cause of action it is alleged that defendant wrongfully obtained a satisfaction of the purchase-money bond and mortgage delivered by Yonkers to the Edward Ann Corporation, but which bond and mortgage belonged to the intestate, on which a balance of $132,000 remained unpaid.

The defendant, in his first defense, alleges that the intestate, during the years 1932 to 1934, inclusive, was engaged in the business of manufacturing and selling beer at the Yonkers brewery, situated at Edward and Ann streets in the city of Yonkers. This brewery was purchased by intestate in June of 1932 for the sum of $75,000, but title thereto was taken in the name of one Julian G. Straus, another of intestate's dummies. The Edward Ann Corporation

was organized by intestate on the 6th day of July, 1932, and title to the brewery was transferred from Straus to that corporation, its stock issuing to Straus. Upon the repeal of prohibition it was necessary to keep secret the identity of the intestate as the true owner of the corporation and of the brewery, to the end that Federal and State permits to manufacture and sell beer be obtained. Accordingly, and on the 29th of March, 1934, the Penar Corporation was organized, the name of which was subsequently, and on the 4th of September, 1934, changed to that of Yonkers Colonial Corporation. Vogel was intestate's dummy in that transaction, all the capital stock of the corporation having been issued to him. The Edward Ann Corporation, pursuant to a contract made with Vogel and subsequently assigned to Penar Corporation, sold the brewery to Penar Corporation on the 9th day of April, 1934, taking back in part payment a bond, secured by a purchase-money mortgage, in the sum of $280,000, subsequently reduced to $132,000. Thereafter Penar Corporation applied for and received permits from both the Federal and State authorities to manufacture and sell beer in and from the premises. All of these transactions, it is alleged, " were part and parcel of a fraudulent plan, contrivance and scheme to keep secret from the Federal and State authorities the identity of plaintiff's intestate as the true undisclosed owner and operator of said brewery, and to make it appear that said plaintiff's intestate was not connected in any manner with the said brewery, for the purpose of inducing Federal and State authorities to issue permits for the manufacture and sale of beer and ales at said brewery " and as to which defendant at the time he acquired the property had no knowledge or information.

The question presented is limited to the sufficiency of the first defense as a matter of law. Assuming the allegations therein contained to be true, it appears that intestate took title to the brewery, the shares of stock, the advances and the bond and mortgage in the name of dummies, from whom defendant acquired them, for the illegal and immoral purpose of inducing public authorities to issue permits which otherwise would not have been procured. It is well-settled law that parties to a fraudulent or illegal transaction who are *in pari delicto* may not invoke judicial aid to undo the consequences of their illegal acts. The law leaves them where it finds them. If such a contract be executory, it will refuse to enforce the contract; if executed, it will refuse to disturb the result. The general rule, firmly imbedded in the law of this State, is stated by Chancellor WALWORTH in *Nellis* v. *Clark* (4 Hill, 424, 426): " Where both parties are equally offenders against the positive laws of the country, or the general principles of public policy, or the laws

of decency or morality, *potior est conditio defendentis;* not because the defendant is more favored where both are equally criminal, but because the plaintiff is not permitted to approach the altar of justice with unclean hands." Nor is it of any consequence that defendant was not a party to these transactions, for, as was written in *Robertson* v. *Sayre* (134 N. Y. 97, 99), the " rule is a penalty imposed by the law for the prevention of frauds  *  *  *  and the reason for its application is not weakened in case the grantee [the defendant here]  *  *  *  was not a participant in the fraud." Defendant is in no worse position than would be the dummies were they parties defendant. They were free to treat the benefits acquired by them as their own. As against them the courts would refuse relief by unraveling the illegal transactions for the benefit of the intestate or his representatives.

The facts with which we are concerned differentiate this case from the authorities dealing with an incidental or collateral violation of a statute which is merely *malum prohibitum* and where recovery is not inconsistent with the purpose for which the statute was enacted. (*Rosasco Creameries, Inc.,* v. *Cohen,* 276 N. Y. 274; *Wood* v. *Erie Railway Company,* 72 id. 196; *Ayew* v. *Hawes & Co., Inc.,* 250 App. Div. 596; *Hall* v. *Corcoran,* 107 Mass. 251.) Here the conveyances were made to dummies for the precise purpose of evading the law and in violation of good morals and public policy. (*Bossom Dairy Co., Inc.,* v. *Rockdale Creamery Corp.,* 171 Misc. 657; affd., 258 App. Div. 961.)

The defense on its face is sufficient and the burden of establishing it is on the defendant.

The order granting in part and denying in part plaintiff's motion to strike out separate defenses set forth in the answer should be modified by striking out the first ordering paragraph and by inserting in the last ordering paragraph the word " First " between the words " the " and " Second." As so modified, the order, in so far as appealed from, should be affirmed, without costs.

The appeal from the order denying reargument should be dismissed.

LAZANSKY, P. J., ADEL, TAYLOR and CLOSE, JJ., concur.

Order granting in part and denying in part plaintiff's motion to strike out separate defenses set forth in the answer modified by striking out the first ordering paragraph and by inserting in the last ordering paragraph the word " First " between the words " the " and " Second." As so modified, the order, in so far as appealed from, is affirmed, without costs.

Appeal from order denying reargument dismissed.