RICHARD LOEB, Respondent, v. DRY DOCK SAVINGS BANK, Respondent, and LENA LOEB, Appellant.

First Department, June 25, 1957.

*Bernard Meyerson* of counsel (*Dreyer & Beldock*, attorneys), for appellant.

*Marvin L. Levitt* of counsel (*Isidor Enselman* with him on the brief; *Richard Loeb*, attorney, in person), for Richard Loeb, respondent.

FRANK, J. This is an appeal from a final judgment after a trial without a jury, which determined that the plaintiff, the husband of the defendant, was the sole owner of certain personal property including funds in a jointly held bank account.

While a presumption of joint ownership is created by the Banking Law (§ 239, subd. 3), it is rebuttable prior to the death of either of the named depositors (*Marrow* v. *Moskowitz*, 255 N. Y. 219). Since both parties were alive at the time of the trial, the presumption was not conclusive upon the court and could be overcome by competent evidence. By its determination, the trial court so found.

In her answer, the defendant interposed numerous defenses and counterclaims, some obviously inconsistent. She alleged that all of the funds were her sole property; that they represented loans which she had made to the plaintiff; that by agreement the moneys were joint property.

In support of her claim, the defendant testified that she had helped her husband in his business and was therefore entitled to half the money, but she finally admitted that the money came from the plaintiff, that it was never hers, and that there was no partnership agreement. She asserted that the enterprise in which she claimed an interest was the " booking business ".

The plaintiff unequivocally denied that the funds involved were the fruits of any illegal activity. Without substantial contradiction, he testified to his association with two enterprises whose legitimacy was not seriously questioned. Thus a question of fact was presented as to the source of the money. The trial court's determination upon that issue finds ample support in the record.

Of the total, only the sum of $500 was concededly used for the illegal purpose of a bank account which, at defendant's suggestion, was opened in the name of her brother, a paroled convict, in order to assist him in demonstrating to his parole officer that he had a savings account.

Solely from the defendant's testimony, it is urged that the conclusion be drawn that the plaintiff's business consisted of an illegal activity, the booking of bets.

The dissent herein, based as it is upon a premise not found by the trial court, takes the view that the funds which are the principal subject of the action derive from an illegal source, and from that assumption proceeds to hold, upon the law as reflected in the cited cases, that there can be no recovery. We do not quarrel with the cases cited nor with the principle enunciated in them. We do hold, however, upon the facts as found by the trial court and fully justified by the record, that the cases relied upon are inapplicable here.

Because of their unsavory associations and background, the litigants present a classic example of credibility, always reserved for determination by the trier of the facts. The trial court had the opportunity to observe and listen to the litigants, and to evaluate their testimony. A pure question of fact was thus presented. The trial court's conclusion is fully supported by the credible evidence and should not be disturbed (*Amend* v. *Hurley*, 293 N. Y. 587, 594; *Boyd* v. *Boyd*, 252 N. Y. 422, 429).

The judgment should be affirmed.

Valente, J. (dissenting). The defendant wife appeals from an adjudication that her plaintiff husband is the exclusive owner of (1) funds on deposit in the Dry Dock Savings Bank in their joint names, (2) the furniture removed from the marital home by the wife and placed in storage and (3) the proceeds of a chattel mortgage, wherein the wife was named as mortgagee, held in escrow subject to the judgment of the court.

The parties were married in April, 1947, shortly after plaintiff's release from Federal prison where he was incarcerated for the crime — in plaintiff's terminology — of "Counseling transportation for immoral purposes." When first released, he had served approximately 16 years of the sentence imposed. After the marriage and 7 months following his release, he was required to serve an additional 21 months for violation of parole, and was released in November, 1950.

In April, 1954, the savings bank account involved was opened with an initial deposit of $500 to $525 in the name of Harry Greenberg or Lena Greenberg, payable "to either or the survivor." It is conceded that the plaintiff and defendant are the persons so designated in the account and it appears that each signed a signature card in the name Greenberg. The explanation given by both parties for the use of the name Greenberg is that one Harry Greenberg, the defendant's brother, was in trouble with his parole officer and needed a savings account book to "cover him" with his parole officer. Thus the account in the first instance was obviously and concededly opened for an illegal purpose.

Between April, 1954 and December 19, 1955, deposits were made in this account to the aggregate amount of $10,580. The wife testified that all the money had its origin in her husband's "business" as a book-maker in which she aided him. Conversely, the husband denied that the money represented the proceeds of book-making or policy after the court, at his attorney's request, advised that he could invoke the Fifth Amendment in relation to such questioning.

Moreover, the husband refused to divulge the precise source of these moneys and other moneys which came into his possession.. When he was released from Federal prison in November, 1950, he had total assets of $500. He worked from time to time at occupations from which he derived a nominal salary. At the time the account was opened in 1954, he had another account in his own name in the same bank with a balance of $10,000. He testified that in connection with his "business" he carried as much as $10,000 in cash on his person, that he

purchased furniture to the value of $10,000 and paid $180 per month rent. In addition, he invested money in chattel mortgages from time to time and sometimes took these mortgages in his wife's name.

On the basis of either the plaintiff's explanation as to the source of his income or his lack of explanation, it is fair to assume that the account was continued for some illegal purpose, if not, for the purpose it was originally conceived.

With reference to the mortgage proceeds held in escrow, plaintiff testified he placed that mortgage in his wife's name because he was on parole at the time and wanted to " cover up " (from his parole officer) the fact that he was " carrying on transactions ", a clearly illegal objective.

The dramatic climb of the plaintiff's finances vis-à-vis his backgrounds lends an Alice In Wonderland motif to his testimony and leaves the reader " curiouser and curiouser " as to its source. Whatever the source, it is manifest that both plaintiff and defendant (because of their mutual apprehension about revealing the illicit sources of the money in question) failed to present the clear and convincing proof required to sustain their respective claims. It is a fair assumption that the money in issue represented the proceeds of book-making or some other illegal activity. There is authority for the proposition that a plaintiff cannot assert title to funds obtained from professional gambling or other illegal enterprise. (*Hofferman* v. *Simmons*, 290 N. Y. 449; *Carr* v. *Hoy*, 2 N Y 2d 185.)

However, we do not have to go as far as to denominate the cash and the personal property in litigation as the proceeds of illegal ventures. Regardless of whether the moneys in the joint account are considered the proceeds of illegal activity, the placing of the account in the joint names and the taking of the chattel mortgage in the wife's name were both admittedly accomplished for an illegal purpose and the husband is precluded from asserting title or otherwise questioning the transactions.

In *Dunn* v. *Dunn* (1 A D 2d 888) plaintiff parents sought to compel their son, a veteran, to convey property to them that had been purchased in his name so that a mortgage loan, guaranteed by the Veterans' Administration, could be obtained on the property. The dismissal was affirmed by the appellate court on the ground that the attempt of the parents to obtain benefits to which only veterans were entitled rendered their complaint void and unenforcible as against public policy.

In *Pattison* v. *Pattison* (301 N. Y. 65) plaintiff conveyed real property to his sister on her oral promise to reconvey it to

194

him. The purpose of the transfer was to defraud his creditors. The court refused to direct a reconveyance because of the corrupt purpose in making the conveyance.

In *O'Connor* v. *O'Connor* (263 App. Div. 820, affd. 288 N. Y. 579) plaintiff husband conducted a liquor business in his wife's name, a fact he failed to disclose to the State Liquor Authority. Though this was a *malum prohibitum,* the court dismissed the plaintiff's complaint in which he sought to impress a trust on the business.

In *Flegenheimer* v. *Brogan* (284 N. Y. 268) plaintiff administratrix' complaint alleged that her intestate was the actual owner of stock issued in the name of a dummy to keep secret the identity of the intestate so permits to manufacture and sell beer, that otherwise would have been denied, could be obtained. The court held that the defense of illegality could properly be made on the ground that the transaction was so far against the public good as to disable plaintiff to invoke the aid of the court.

The illegal purpose established in the present case — evasion of scrutiny by the parole officials — is at least as perverse as that which prompted the courts to deny any relief in the foregoing cases.

Particularly applicable here is the admonition found in *Stone* v. *Freeman* (298 N. Y. 268, 271) where it was said: " For no court should be required to serve as paymaster of the wages of crime, or referee between thieves. Therefore, the law ' will not extend its aid to either of the parties ' or ' listen to their complaints against each other, but will leave them where their own acts have placed them ' (*Schermerhorn* v. *Talman,* 14 N. Y. 93, 141)."

In *Flegenheimer* v. *Brogan* (259 App. Div. 347, 349, affd. 284 N. Y. 268) the Appellate Division stated: " It is well-settled law that parties to a fraudulent or illegal transaction who are *in pari delicto* may not invoke judicial aid to undo the consequence of their illegal acts. The law leaves them where it finds them."

The burden is upon the plaintiff to show by clear and convincing proof that he alone is entitled to the cash and the items of furniture. In addition and in respect to the joint account, he must overcome the presumption of joint ownership that attaches as a result of it being a joint account. (*Marrow* v. *Moskowitz.* 255 N. Y. 219.) A reading of the record plainly indicates that the plaintiff has failed to meet either of these burdens.

Trial Term erroneously concluded that the plaintiff overcame the presumption of joint ownership, arising under subdi-

vision 3 of section 239 of the Banking Law which attached to the savings account, and that plaintiff had established his right to the specific items of furniture and that he had made no gift of the chattel mortgage.

However, the question as to whether or not plaintiff met the burden is moot because he is precluded from establishing that he alone is entitled to the cash and the items of furniture for the reasons hereinabove set forth.

Accordingly, the judgment should be reversed and the complaint dismissed.

PECK, P. J., and BREITEL, J., concur with FRANK, J.; VALENTE, J., dissents and votes to reverse and dismiss the complaint in opinion, in which BOTEIN, J., concurs.

Judgment affirmed, with costs to the respondent Richard Loeb.