### SCHAFF, Rec., v. RICHARDSON.

No. 16485—Opinion Filed June 1, 1926.

Rehearing Denied July 27, 1926.

1. **Damages — Recovery Denied Where Plaintiff's Unlawful Act is Concurring Cause.**

Where a plaintiff's own unlawful act concurs in causing the damage he complains of, he cannot recover compensation for such damage.

2. **Same—Animals — Nonliability of Railroad for Infection of Hogs in Pens.**

Record examined, and held, that the evidence adduced on the trial of the instant case was not sufficient to support the verdict of the jury and the judgment rendered thereon.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Greer County; T. P. Clay, Judge.

Action by P. K. Richardson against Charles E. Schaff, Receiver of the Wichita Falls & Northwestern Railway Company.

Judgment for plaintiff, and defendant brings error. Reversed.

A. M. Stewart, Wm. M. Williams, and C. C. Huff, for plaintiff in error.

W. B. Garrett, for defendant in error.

Opinion by PINKHAM, C. This action was instituted by the defendant in error, P. K. Richardson, as plaintiff, against the plaintiff in error, Charles E. Schaff, receiver of the Wichita Falls & Northwestern Railway Company, as defendant, in the district court of Greer county, to recover damages against the defendant in the sum of $3,807.50, with interest thereon. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

Plaintiff in his petition alleges that the sum of $3,807.50 is due him by reason of the negligence of the defendant in allowing the stock pens of the railway company to become infected with hog cholera, and that at the time of the matters complained of the plaintiff was not aware that said hog pens were infected with hog cholera, and that he had no notice of such fact; that by reason of the fact that at the time of plaintiff's shipment of certain hogs on the 6th or 7th day of October, 1922, from the pens of defendant company, he was compelled to return to his own feed lot a part of his intended shipment for the reason that the capacity of the car furnished him by the railway company was not sufficient to contain all of the hogs which he had caused to be sent to defendant's stock pens; that the hogs which he returned to his own pens had become infected, and that they thereby infected all of the hogs in his pens, and that he lost, by reason of said infection of his hogs with hog cholera, a large number of the total value of $3,807.50 at the time of their death, between October 21 and November 1, 1922.

For answer the defendant alleges: First, that the allegations contained in plaintiff's petition do not state facts sufficient to constitute a cause of action against the defendant; second, it denies generally and specifically each and every material allegation contained in plaintiff's petition; third, the defendant denies generally all allegations of negligence, or that its acts contributed or caused damage to plaintiff's hogs; and further states that if plaintiff suffered any damage to his hogs, such damage was the proximate result of contributory negligence of plaintiff and by plaintiff's violation of the laws of the state of Oklahoma and the rules and regulations of the State Board of Agriculture.

The defendant further alleges that the plaintiff, at the time alleged in his petition, placed a large number of hogs in the public stock yards and railroad pens of the defendant for the purpose of shipping the same for immediate slaughter, and that the defendant furnished cars adequate for the transportation of such hogs; that without the knowledge of defendant at the time same was done, the plaintiff did not ship all of said hogs that were placed in said pens, but returned two or more of them to his feeding pens; that the returning of said hogs to said feeding pen was a transportation of the same within the state of Oklahoma, and was done by the plaintiff in violation of the laws of the state of Oklahoma and of section 1, rule 9, of the rules and regulations of the State Board of Agriculture of the state of Oklahoma. Plaintiff's reply to defendant's answer was by way of general denial. The cause was tried before a jury, and resulted in a verdict for the plaintiff in the sum sued for. Defendant's motion for a new trial was overruled and exception reserved. Judgment was entered for the plaintiff in accordance with the verdict of the jury, and the defendant has appealed to this court.

The first proposition presented by counsel for defendant is that the petition of the plaintiff does not state a cause of action, and, further, that if it should be held that the petition does state a cause of action, there is not sufficient competent evidence disclosed by the record to support the allegations of the petition.

No authorities are cited by defendant in support of the proposition that plaintiff's petition did not state a cause of action.

A petition charging that the defendant carrier, a railroad company, carelessly and negligently permitted its stock pens to become foul and filthy, and that they were infected with the disease known as hog cholera, and that prior to the time of the matters complained of hogs had died in the railroad company's pens of cholera, and that at the time plaintiff delivered his hogs to the carrier's pens for shipment plaintiff was not aware of the fact that said stock pens were so infected and had no notice of such fact, and that a large number of plaintiff's hogs became infected with cholera and died as a result thereof, is sufficiently definite, and a demurrer to such petition was properly overruled.

On the question of the sufficiency of the evidence to support the verdict, a more serious question arises and the following facts disclosed by the record may be considered:

The plaintiff, Richardson, had been engaged for many years in the business of buying and selling hogs. On October 6 or 7, 1922, the plaintiff ordered from the agent of the defendant carrier a stock car for the purpose of shipping his hogs to San Francisco, Cal. The plaintiff testified that he sent to the railway company's stock pens a sufficient number of hogs to fill a 40-foot car which had been engaged for that purpose. It appears that a smaller car was furnished than the one promised, and that two hogs, weighing some 200 pounds each, were left in the pen. There is some little conflict in the evidence as to why all of the hogs in question were not loaded on the car, but the admitted fact is that these two hogs were not loaded on the car and were left in the carrier's pen, and after remaining there a short time the plaintiff was required by the agent of the defendant company to take them back to his own feed yard.

It further appears that on or about the 21st day of October, 1922, the plaintiff shipped another car of hogs over the defendant's line to Oklahoma City. When this carload of hogs arrived in Oklahoma City, some 25 of them were dead and many others died in the yard after they had been taken out of the car. The witness, Mr. Volz, a member of the firm at Oklahoma City that purchased this carload of hogs from the plaintiff, testified that he had had 28 years' experience in handling hogs, and that as a result of his experience it was his opinion that these particular hogs died of cholera.

There was no evidence that any of the hogs that were shipped to California died of cholera, or of any other disease. The evidence on the part of the plaintiff further shows, that after the two hogs had been taken from the defendant's stock pens and placed in the plaintiff's own feed yards with his other hogs, a disease soon thereafter appeared and a large number of his hogs died of hog cholera.

The evidence further disclosed, on the part of the plaintiff, that the condition of the defendant company's stock pens had been for a long time subject to protest and complaint on the part of the officials of the city of Mangum, on account of the unsanitary condition of the carrier's pens.

The amended answer of the defendant sets up, not only the contributory negligence of the plaintiff, but the violation by the plaintiff of the laws of the state and the published rules and instructions of the State Board of Agriculture.

It is made the duty of the railway corporations doing business in this state to disinfect the shipping pens and cars used by them in transporting live stock in or through this state, in such manner and at such times and places as the Board of Agriculture, or one of its inspectors, may order and designate. Section 3686, C. S. 1921.

Section 3630, C. S. 1921, provides that the records, files, and books of the Board of Agriculture of this state shall be receivable as evidence, and the rules and regulations and orders of said board, when published, shall be deemed and held to be public notice, and shall have the force and effect of law and be judicially noticed and considered as such, where such rules, orders, and regulations are of general application, etc.

One of the rules promulgated by the State Board of Agriculture, to wit, section 1 of rule 9, is incorporated in the record, and provides that all public stockyards and railroad pens, loading pens and chutes in this and other states, except such as are maintained especially for healthy hogs under supervision of the United States Bureau of Animal Industry, or the live stock inspector official of the state in which such yards are located, shall be considered infectious, and hogs which have in any manner come in contact with such yards, pens, and loading chutes shall be considered exposed, and shall not in any manner be moved or transported into or within the state except to recognized slaughtering centers for purposes of immediate slaughter.

As an exception to this rule it is provided that hogs may be shipped, transported, or otherwise moved, into or within the state of Oklahoma from public stockyards where inspection is maintained under the supervision of the Bureau of Animal Industry or the Oklahoma State Board of Agriculture, for purposes other than immediate slaughter in conformity with provisions contained in the B. A. I. order No. 245 and amendments thereto, which provide that said hogs shall be inoculated with cholera serum, so as to render them immune to cholera and be treated by a competent veterinarian under the supervision of the Bureau of Animal Industry.

Dr. Robnett, State Veterinarian for ten years under the Board of Agriculture of the state of Oklahoma, identified the live stock rules and regulations of the state of Oklahoma and section 9, supra, together with exceptions thereto, as heretofore referred to, and also testified that the public stock yards and pens of the railroads at the place involved herein were not maintained under

the supervision of the Bureau of Animal Industry of the United States or of the State Board of Agriculture. Two local veterinarians, Dr. Howard and Dr. Hughes, who testified on behalf of the plaintiff, both of whom had worked under the State Veterinarian, corroborated Dr. Robnett's testimony. This testimony was nowhere disputed, and it was admitted by the plaintiff that no precautions were taken to disinfect or treat the two hogs returned from the carrier's pens on October 6, 1922, but that the same were returned to the feed yard of the plaintiff where there was a large number of hogs, and that the two hogs returned were kept with plaintiff's other hogs, and fed and watered in the same pen. It was the theory of the plaintiff that the two hogs that he returned on the 6th or 7th day of October, 1922, to his own feed yard, had contracted the disease known as hog cholera while in the defendant's stock pens, and communicated the same disease to his remaining hogs.

The evidence shows that the plaintiff had for many years purchased hogs from various sources in the part of the country where he resided for the purpose of feeding and shipping the same, and that between the 6th and 7th day of October, when he returned the two hogs to his feed yard, and the 22nd day of October, following, when he made his second shipment of hogs, he had purchased from various persons other hogs and placed them in his feed yard for the purpose of feeding and shipping the same; and while it is true that a number of persons who sold these hogs to the plaintiff testified that their hogs were healthy when they sold them to the plaintiff, it is also true that there is a total want of competent evidence to support the allegation of plaintiff's petition that there was any hog cholera at the carrier's pens.

Dr. Hughes and Dr. Howard, witnesses for the plaintiff, testified that there had not been any test made to ascertain whether or not the pens of the railroad company were infected with cholera germs, and all the expert witnesses testified that unsanitary conditions had nothing to do with cholera infection, and that the infection could not originate because of filthy or unsanitary conditions.

The plaintiff lost a number of hogs and they may have died from hog cholera, but the evidence disclosed by the record is, we think, clearly insufficient to connect the railway company with the infection of plaintiff's hogs.

Furthermore, under the published rules and regulations of the Board of Agriculture and the orders of said board, public stockyards, such as the yard in question, are considered infectious and exposed, and hogs which in any manner come in contact with such yards, pens, and loading chutes, should not be removed within or into the state except to recognized centers for the purpose of immediate slaughter. The plaintiff was clearly chargeable with notice of the rules and regulations and orders of the State Board of Agriculture, as provided by section 3630, supra, yet, in violation of the law he removed the two hogs from the carrier's pens without having them disinfected, and thereby upon his own theory his other hogs became infected with cholera.

It is further contended by the defendant that the court erred in various instructions given to the jury, exceptions to which were reserved. In paragraph six of the general instructions the jury was instructed that it was the duty of the railroad company to disinfect the pens and cars used by them at such times and places as the Board of Agriculture or one of its inspectors may order, and that a failure to comply with the order of the Board of Agriculture would constitute negligence.

We are unable to discover any evidence that tends to show that the defendant had failed to disinfect its shipping pens at any time when ordered to do so by the Board of Agriculture or by one of its inspectors. There is no evidence that any inspectors of the Board of Agriculture ever requested the defendant to disinfect its pens, except the testimony of one of the defendant's employes, who stated that at one time such instructions were given and that the defendant immediately complied with such directions. This testimony is nowhere disputed, and the evidence nowhere shows that the defendant violated any of the orders of the Board of Agriculture in this respect.

Plaintiff's requested instruction No. 8, which was given by court, is as follows:

"Gentlemen of the jury, you are likewise instructed that the fact that the plaintiff was charged with knowledge that the pens in question were considered infectious under section 1, rule 9, of the State Board of Agriculture does not of itself constitute the actual knowledge of infection referred to and required by the court's instructions in determining the question as to whether or not the plaintiff was guilty of contributory negligence in removing his hogs from said stock pens to his pen, but that such knowledge on the part of the plaintiff must be an actual knowledge arising from the facts and circumstances or proof offered in the case,

and you cannot impute actual knowledge to the plaintiff merely because the plaintiff was charged with notice under the provisions of said order."

The court, in its general instructions, advised the jury that the plaintiff was charged with full knowledge of the State Board of Agriculture declaring loading pens and chutes of the defendant company to be infected.

This instruction No. 8 was inconsistent with the general instructions given, and was, we think, clearly erroneous, and prejudicial to the rights of defendant.

We have carefully examined the entire record of the instant case, and from such examination we are forced to the conclusion that the evidence adduced on the trial of the cause was clearly insufficient to support the verdict of the jury and the judgment rendered thereon.

We think the case should be reversed and remanded, with directions to give the defendant a new trial.

By the Court: It is so ordered.

Note.—See under (1)) 29 Cyc. p. 525. (2) 10 C. J. p. 389 § 600; anno. 26 L. R. A. (N. S.) 712; 4 R. C. L. p. 976.