## CHAMPLIN REFINING CO. v. BROOKS.

No. 23926.　Feb. 26, 1935.

Rehearing Denied April 9, 1935.

Application for Leave to File Second Petition for Rehearing Denied April 30, 1935.

Scarrit & Champlin and McKeever, Elam, Stewart & McKeever, for plaintiff in error.

Cruce & Franklin and Otjen & Carter, for defendants in error.

BAYLESS, J. Lydia M. Brooks, hereinafter called plaintiff, instituted an action in the district court of Garfield county, Okla., against Champlin Refining Company, a corporation, Eason Oil Company, a corporation, and the city of Enid, a municipal corporation, defendants, which defendants will be referred to hereinafter specifically by name. The purpose of the action was to recover damages. Judgment was rendered in favor of the plaintiff, upon the verdict of the and against the plaintiff. The trial court the jury was in favor of the city of Enid and against the plaintiff. The trial court sustained a demurrer to the plaintiff's evidence and motion for directed verdict filed by Eason, and rendered judgment in favor of Eason and against the plaintiff. Champlin brings this appeal. It is necessary to mention the other parties defendant in discussing the pleadings and evidence, although they will not be affected by this opinion.

Plaintiff's petition described her property, gave its history with reference to the acts of pollution, and described the location of the properties of the parties to this action with reference to each other. The petition gave a detailed description of Boggy creek and recited its use by, and value to the plaintiff. It contained allegations that the city of Enid maintained a sewage disposal plant, which emptied into the creek above the plaintiff's home, and that because of its inadequate size and the negligent and inefficient operation thereof the sewage of the city passed through said plant and emptied into the creek without having been properly treated, and as a result thereof the waters of the creek were polluted. It contained allegations that Champlin and Eason jointly constructed, owned, and operated a pipe line from their respective refineries to said creek, by the use of which they emptied into the creek, above the home of the plaintiff, waters impregnated with chemicals and waste matters from said refineries, and thereby polluted the said creek. It is further alleged that these pollutive substances discharged into said creek by said defendants resulted in changing the creek from a running stream of clear, usable water to a stream of filthy, poisonous, and unusable water which gave off noxious odors.

It further alleged the following elements of damages resulting to the plaintiff therefrom: The loss of the use of the water of the creek; the necessity of sinking wells on plaintiff's farm in order to obtain other water and, in time, the impregnation of the waters of these wells with these pollutive substances to the extent of their destruction for use; the necessity of plaintiff going to the trouble and expense of hauling water from the city of Enid to her farm; and the loss of comfort and health resulting from the odor arising from the creek.

Champlin's answer sets up a number of defenses, legal and factual, but in view of the fact that all of its assignments of error are directed toward errors appertaining to evidence, or errors of law based upon the evidence, we will not set out this answer herein. This answer took positive issue with the allegations of the plaintiff's petition wherever they sought to charge Champlin with any responsibility for the pollution complained of.

The plaintiff testified as to the physical facts and surroundings, the early condition of the creek and the changes which took place in the waters thereof, the loss of the use of water, the sinking of the wells and the changes in the condition of the waters of the wells by which they were rendered unusable, the necessity for hauling water from elsewhere to the farm for use, and the discomforts caused by the odors arising from the creek. She was corroborated in the parts of her testimony relative to the change in the condition of the waters in the creek, the change in the condition of the waters of the well, and the odors arising from the creek, and the attending discomforts by at least three witnesses. The plaintiff, on cross-examination, admitted that raw sewage from her home was discharged into the creek abreast of her home, but she insisted that there was a minimum and negligible quantity of this raw sewage by reason of the fact she and her husband were the only residents of the home and that they restrained their use of the toilet facilities as much as possible. She and other witnesses testified that the prevailing offensive odors were attributable to the refinery water and waste substances in the creek rather than to human waste. Plaintiff's expert witness, a chemist, testified concerning the polluted condition of the waters of the creek, attributed this pollution to the acts of the defendants, and stated that the amount of raw sewage discharged into the creek by the plaintiff's family would be small and would have only "a very small increase" in the pollution of the creek, and that it would not have any effect upon the waters of the creek above plaintiff's home where the alleged pollutive substances of the defendants were emptied into the creek.

The city of Enid introduced as witnesses several of its employees at the sewage disposal plant, some of the responsible city officials, and nonresident sanitary engineers to refute plaintiff's charges concerning its responsibility for the pollution of the waters of said creek through its sewage disposal plant.

Champlin and Eason each introduced expert witnesses as to the condition of the waters of the creek and the well water and to establish the pollution of the water would not result from their acts, if indeed it was polluted. Nine expert witnesses, consisting of sanitary engineers, water purification experts, veterinary doctor, chemist, biologist, and bacteriologist, testified on behalf of the defendants. These witnesses took numerous samples of the waters of said creek at various places and at various times and made numerous tests. The bulk of their testimony was favorable to the defendants, although here and there, in the efforts of an expert witness to clear his principal of blame, would creep into the record corroboration of the plaintiff's expert witness and her claims, or would appear evidence unfavorable to some other defendant but favorable to the plaintiff. In the mass of this evidence there was sufficient reasonable evidence to support the plaintiff's cause of action. The evidence of the plaintiff generally is in conflict with the purported tendency of the defendants' evidence, and at times the evidence of the various defendants conflicted and, as said, sometimes aided the plaintiff. It is also proper to say that the jury was permitted to inspect the premises at the close of the testimony. The trial court did not see fit to overturn the verdict of the jury, and we will not do so in view of the conflict in the evidence and what we have heretofore said of the sufficiency of reasonable evidence to support the jury's verdict.

Champlin's first assignment of error reads:

"The verdict of the jury is contrary to law, is contrary to the instructions as given in said cause by the court, and is not sustained by sufficient evidence."

What we have just said disposes of that part of this assignment concerning the sufficiency of the evidence to support the verdict.

Concerning the argument that the verdict is contrary to the instructions, we have this to say: Instruction No. 6 advised the jury, in substance, that if the waters of the creek were polluted by the plaintiff she could not recover unless she separated the amount of her own pollution from the other pollution. Champlin insists that the plaintiff did not do this, although it was plain on the face of the record that she did pollute the waters of the creek. We agree with this statement in substance, but Champlin's argument overlooks the fact that the plaintiff minimized the amount of her pollution by her own testimony and that of her expert witness until the jury was justified in believing and finding that the amount of pollutive substance which she discharged into the creek was such a negligible factor that it did not contribute in an ascertainable degree.

Champlin also argues that the jury ignored instruction No. 12 by which they were advised that Champlin contended the chemicals it discharged into the creek tended to purify the water and neutralize the pollution already therein or discharged thereinto by it or thereafter by anyone else. It is sufficient to say that, while its witnesses so testified, the effect of their testimony was offset by the testimony of other experts who contradicted this evidence or minimized the extent of purification claimed. Champlin in making this argument overlooks the fact that other experts testified to finding these chemicals in the waters of the plaintiff's wells and that there is evidence that it is possible that such chemicals could have come from Champlin's refinery down the creek and through percolating underground waters to plaintiff's wells. We cannot say that the jury ignored this instruction.

Champlin relies upon the decision of this court in an earlier action between it and plaintiff (Brooks v. Champlin Ref. Co., 159 Okla. 213, 15 P. [2d] 62), which opinion, it argues, is a judicial determination in its favor of the issue of purification and no pollution. We cannot agree with this. In this action the plaintiff herein was attempting to enjoin Champlin from discharging these alleged pollutive substances into this creek above the plaintiff's home. We construed the evidence in that action to support the finding of the trial court that the plaintiff therein, who is the plaintiff herein, had not made therein a showing of the creation of a nuisance, nor had she shown irreparable injury. By saying therein that she was not entitled to equitable relief we did not also say or mean to infer that she could not thereafter maintain an action in a court of law to establish that she was entitled to relief in the form of damages. Evidence might fall short of justifying a court of equity decreeing its extraordinary remedy of injunction, and yet the same evidence, if introduced in a court of law, might be sufficient to support the verdict of a jury for damages alleged to have been suffered as a result of the acts done, which acts a court of equity had refused to enjoin in advance.

Champlin's assignment of error No. 2 is:

"That there was error in overruling this defendant's: (first) demurrer to the evidence; (second) motion for directed verdict; (third) motion for new trial."

What we have said hereinbefore when we were discussing the evidence covers that portion of this assignment which relates to errors in evidence. That portion of the argument to this assignment, backed by the citation of authorities, touching upon the responsibility of the plaintiff for her own acts of pollution is covered by the rules which we announced in Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906. This phase of the appeal was noticed, discussed, and disposed of by us previously in this opinion in relation to instruction to jury No. 6.

We must decline to adopt the rule contended for by Champlin to the effect that plaintiff, by discharging into this stream the raw sewage from her home, thereby violated section 4466, O. S. 1931 (sec. 8691, O. O. S. 1921), to the extent that her conduct became illegal in the sense that she could not avail herself of the aid of the courts for any damages resulting to herself to which her acts contributed. Champlin cites 38 Cyc. 529; Hall v. Corcoran, 107 Mass. 251, 9 Am. Rep. 30; and Schaff v. Richardson, 119 Okla. 160, 250 P. 133. We believe the rules in Walters v. Prairie, supra, already announced by us, is the better rule applicable to the situations of this case.

The third assignment of error is:

"For error of law occurring at the trial and excepted to by the defendant."

We find no inconsistency or conflict between instructions No. 8 and No. 13. Instruction No. 8 advised the jury as to the period of limitations back of which the plaintiff could not sue for, nor the jury award, damages. Instruction No. 13 advised the jury concerning an agreement between the parties as to the period of time within which Champlin could be charged with any responsibility for the acts complained of. We feel that the jury fully understood the instructions and their relationship to each other and to the case generally.

Assignment No. 4 reads:

"Irregularity in the proceedings of the court, in that in an abuse of discretion the trial judge refused, over the objection of this defendant, to permit the witness Maxine Japour to make a practical chemical demonstration to the jury of the theory of defense relied upon by this defendant."

This assignment involves a discussion of the trial court's ruling upon an offer to have one of the chemists conduct an analysis, in

the presence of the jury, of a sample of the water. These matters are largely within the discretion of the trial judge and depend upon the peculiar facts and circumstances of each and every offer. We will not interfere or overturn the discretion of a trial judge unless it is shown clearly to be abusive or prejudicial. No such showing is made by Champlin's argument, and we find no merit in this assignment.

Judgment affirmed.

McNEILL, C. J., and WELCH, CORN, and GIBSON, JJ., concur.